# IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| JEANE L. DINTELMAN | |
| Plaintiff | |
| VS. | |
| UNITED STATES OF AMERICA | |
| Defendant | NO: 3:07CV00081 SWW |
| UNITED STATES OF AMERICA | |
| Counter Claimant | |
| VS. | |
| JEANE L. DINTELMAN and JIM L. DINTELMAN | |
| Counter Defendants | |

## ORDER

Plaintiff Jeane L. Dintelman Fortner commenced this suit for return and abatement of trust fund recovery penalties assessed by the Internal Revenue Service ("IRS") for failure to pay taxes withheld from employees' wages for parts of 2002 and 2003. The United States counterclaimed, seeking unpaid trust fund recovery penalties assessed against Plaintiff and Jim

L. Dintelman, Plaintiff's former spouse.[1]  The case is before the Court on Plaintiff's motion for summary judgment (docket entries #47, #48, #49, #50, #51, #52, #53, #54, #55, #56, #57, #39, #60, #61, #62, #63, #64, #65, #66, #68, #69, #88, #87) and the Government's response in opposition (docket entry #83. #84, #85).  Also before the Court is Plaintiff's motion for discovery (docket entry #86) and the Government's response in opposition (docket entry #90).  After careful consideration, and for reasons that follow, Plaintiff's motion for summary judgment and motion for discovery will be denied.

## I.  Statutory Background

The Internal Revenue Code requires employers to withhold income and Federal Insurance Contribution Act ("FICA") taxes from the wages of employees, when those wages are paid.  *See* 26 U.S.C. §§ 3102(a), 3402(a).  Withheld amounts, commonly referred to as trust fund taxes, "shall be held to be a special fund in trust for the United States," *see* 26 U.S.C. § 7501, and the willful failure to pay over trust fund taxes to the United States subjects a responsible person to personal liability.  *See* 26 U.S.C. § 6672.

> Title 26 U.S.C. § 6672(a) provides in pertinent part as follows:
>
> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.
>
> Section 6672(a) imposes liability on *any* person, also known as a "responsible person,"

who is under a duty to collect, truthfully account for, *or* pay over taxes.  *See Slodov v. United*

---

[1] By order entered June 27, 2008, default judgment was entered against Jim Dintelman.

*States*, 436 U.S. 238, 249, 98 S. Ct. 1778, 1786 (1978)(holding that a "responsible person" is one who has a duty to perform at least one of the three functions listed under § 6672). Furthermore, § 6672(a) imposes joint and several liability, so more than one person may be a "responsible person" subject to liability.

**II. Factual Background**

In 1999, Plaintiff, who was then married to Counter Defendant Jim L. Dintelman ("Dintelman"), began working as an EMT/paramedic for Pafford Ambulance Service ("Pafford") in Fordyce, Arkansas. In January 2002, Dintelman began discussing the possibility of purchasing a portion of Pafford's ambulance service operations. Although Dintelman knew nothing about operating an ambulance service, he was bored with his job as a machine operator and wanted a change.

In February 2002, Plaintiff and Dintelman formed Elite Medical Services, Inc. ("Elite"). Elite's articles of incorporation, signed by Plaintiff in her capacity as president, list Plaintiff and Dintelman as the sole incorporators. *See* Compl., Ex. C. According to Plaintiff's and Dintelman's deposition testimony, Dintelman designated Plaintiff as Elite's president and CEO only because he believed that the corporation would be more likely to obtain loans and government assistance if a female were listed as the CEO. *See* docket entry #54 (Jim Dintelman Dep.) at 72-73, Ex. #6, ¶5; docket entry #52, (Jeane Dintelman Dep.) at 18.

Plaintiff and Dintelman separated in June 2002. In August 2002, Plaintiff met Steve Krakowski ("Krakowski"), and the two began a romantic relationship.

In September 2002, Elite obtained a license to operate ambulance services, and Dintelman entered an agreement to purchase a portion of Pafford's ambulance service operations

3

in several Arkansas cities. The operator's license designates both Plaintiff and Dintelman as ambulance service operators.

In October 2003, Elite began providing ambulance services, and Dintelman began living in a trailer located behind Elite's ambulance station. Through mid-October 2002, Plaintiff worked as a paramedic for an ambulance service operated by the Dallas County Hospital. However, that ambulance service ceased operations, and Plaintiff began working for Elite as an EMT/paramedic. Despite their marital separation, Plaintiff and Dintelman communicated on a daily basis. However, Plaintiff maintains that her conversations with Dintelman regarding Elite were limited to her work schedule, and they never discussed financial issues.

Due to undercapitalization and a sluggish reimbursement system, Elite experienced serious financial problems soon after it began operations. In November 2002, Elite entered a factoring agreement with Funding Resources, Inc. Documents related to the factoring agreement are signed by Dintelman, in his capacity as Elite's CFO, and several of the documents are signed by Plaintiff, as a guarantor. Plaintiff claims, however, that her signature is forged on one such document.

Elite failed to timely file its first and second quarterly employment tax returns (IRS Form 941), due January 31, 2003 and April 30, 2003, respectively; and it failed to deposit taxes withheld from employees' paychecks, as required by law.

In June 2003, feeling that she should "learn more," Plaintiff contacted the Small Business Administration and sought advice from Tina Powis-Dow ("Powis-Dow"), a business consultant. *See* docket entry #53 (Jeane Dintelman Dep.) According to Plaintiff, after Powis-Dow reviewed Elite's books and talked to Dintelman, she told Plaintiff that Dintelman did not know what he

4

was doing and that she should get out of the business or at least retain a competent bookkeeper.

Following Powis-Dow's advice, Plaintiff and Dintelman met with a Clark W. Terrell, a CPA. Terrell testifies that the only service he provided the Dintelmans was "chair-side" assistance and coaching regarding accounting software. *See* docket entry #59 (Terrell Dep.) at 10. Terrell states: "There were may conferences about what we . . . could do and what needed to be done, but that was the only thing that ever came out of it." *Id*. at 11.

According to Terrell, Dintelman kept track of Elite's finances using a hand-written, non-ledger system, and it appeared to him that Dintelman was the only person that knew anything about Elite's monetary transactions. *See id*. at 33-34. Terrell testifies: "He knew most about the business as I can recall. I saw in his handwriting records associating with billing, excruciating detail. He must have an inordinate capacity to deal with things like that, and he kept up with his own billing and had detailed records. He wrote the checks on the business. The checkbook was filled in." Docket entry #59 (Terrell Dep.) at 21-22.

Elite failed to timely file its third quarterly employment tax return, due July 31, 2003, and it failed to deposit taxes withheld from employees' paychecks, as required by law.

In August 2003, Plaintiff informed Dintelman that unless he agreed to hire Krakowski as Elite's bookkeeper and CFO, she would attempt to force the sale of the corporation. According to Plaintiff's affidavit, she demanded that Dintelman hire Krakowski because she was "very dissatisfied with the way that the office was being run and that the financial records were being maintained . . . by . . . Dintelman." Docket entry #50, ¶7. Subsequently, Krakowski was hired as Elite's bookkeeper and added as a signatory on Elite's checking account. On August 15, 2003, Plaintiff and Dintelman borrowed an additional $25,000 from Funding Resources, and

5

they both signed related loan and mortgage documents.

On August 24, 2003, the IRS sent Elite notice that Revenue Officer Stephanie Ridgell had been assigned the task of collecting Elite's tax debt. Ridgell visited Elite's office in Hamburg, Arkansas and met with Plaintiff, Dintelman, and Krakowski. An IRS Form 4180 (Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Tax) completed by Ridgell and dated October 8, 2003 bears Plaintiff's and Dintelman's signature, under the following statement which appears in bold, large letters: "I declare that I have examined the information given in this statement and, to the best of my knowledge and belief, it is true, correct, and complete. *See* docket entry #83, Ex. #5.

The form lists Plaintiff as a Elite's CEO, president, and 50% shareholder and states her duties as human resources, public relations, and "other services." Additionally, the form indicates that both Plaintiff and Dintelman performed the following functions for Elite from February 2002[2] through October 8, 2003: hire/fire employees, manage employees, direct (authorize) payment of bills, deal with major suppliers, open close corporate bank accounts, sign corporate checks, make/authorize bank deposits, and authorize payroll checks. Finally, in response to the inquiry: "When and how did you first become aware of the delinquent taxes?," the form reads: "Jeane-several months ago due to lack of knowledge about business." Docket entry #83, Ex. #5.

Elite failed to timely file its fourth quarterly employment tax return, due November 14, 2003, and it failed to deposit taxes withheld from employees' paychecks as required by law.

---

[2]In deposition, Ridgell explained that she recorded the beginning date as "February 2002" because "that's when the assessment [of penalties] would have started." Docket entry #56 (Ridgell Dep.) at 48-49.

On September 6, 2004, the IRS assessed trust fund recovery penalties against Plaintiff and Dintelman pursuant to the Internal Revenue Code § 6672 in the amount of $82,131.97 for the fourth quarter of 2002, and the first three quarters of 2003, based on willful failure to collect, truthfully account for, and pay over federal employment taxes due. Plaintiff paid a portion of the assessed penalty and filed this lawsuit seeking a refund of her partial payment and abatement of the unpaid balance of the assessed penalty. The Government filed an answer and counterclaim for the balance of the IRS assessment plus accrued and unassessed interest and penalties.

### III. Plaintiff's Motion for Summary Judgment

Section § 6672 imposes liability when two requirements are met: (1) the person must be a "responsible person," and (2) the person must act "willfully" in failing to pay over trust fund taxes. *See Ferguson v. United States*, 484 F.3d 1068, 1072 (8th Cir. 2007). Plaintiff maintains that she is entitled to summary judgment[3] because the undisputed evidence shows that neither

---

[3] Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

7

requirement is met in this case.

**A. Responsible Person**

A "responsible person" under § 6672 is someone who has "'the status, duty and authority to avoid the corporation's default in collection or payment of taxes.'" *Id*.(quoting *Baron v. United States*, 988 F.2d 58, 59 (8th Cir. 1993)(quoting *Kenagy v. United States*, 942 F.2d 459, 464 (8th Cir. 1991)). "As the case law makes abundantly clear, a person's 'duty' under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds." *Godfrey v. United States*, 748 F.2d 1568, 1576 (8th Cir. 1984). Signs of a "responsible person" in this context include holding a corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, an the ability to hire and fire employees. "[W]here a person has authority to sign the checks of the corporation, or to prevent their issuance by denying a necessary signature, or where that person controls the disbursement of the payroll, or controls the voting stock of the corporation, he will generally be held 'responsible.'" *Godfrey,* at 1576 (internal citations omitted). On the other hand, whether a person is responsible is a matter of substance, not form. *Id*. To trigger liability under § 6672, a person must have significant decision-making authority over the corporation's tax matters, and a person's technical authority to sign checks and duty to prepare tax returns are not enough to make the person responsible under § 6672. See *Kenagy v. United States*, 942 F.2d 459, 464 (8th Cir. 1991).

The core question in determining whether Plaintiff qualifies as a "responsible person" is whether she had the power to control the decision-making process by which Elite allocated funds to creditors in preference to its withholding tax obligations. *See Hoffa v. United States*, 516 F.2d 931, 936 (7th Cir. 1975). Plaintiff presents evidence showing that Dintelman was Elite's driving

8

force from its inception and that he exercised firm control over Elite's account receivables and payables, using a hand-written system. In fact, Dintelman testifies that he alone paid Elite's bills, which were forwarded directly to him, and that Plaintiff never saw the bills. *See* docket entry #54 (Jim Dintelman Dep.) at 38-40, 51. Dintelman further testifies that he had exclusive control over payroll, and he failed to set aside income and FICA withholdings, which he alone spent on "the general operations of the ambulance service." *Id.* at 47.

Despite the foregoing evidence, the fact remains that Plaintiff signed an IRS Form 4180, which plainly states that from February 2002 through October 8, 2003 Plaintiff performed duties and functions including directing or authorizing the payment of bills, signing or countersigning corporate checks, and authorizing payroll checks.[4]

Furthermore, even assuming that Jim Dintelman kept a tight rein over Elite's monetary transactions, it is not clear that Plaintiff was unable to exercise her authority as a corporate officer and 50% owner to see that Elite's trust fund taxes were paid.[5] One cannot escape liability

---

[4]Plaintiff testifies she made clear to Ridgell that the information recorded on IRS Form 4180 regarding Plaintiff's corporate duties and functions was incorrect, but Ridgell told her that she had to sign the form. Ridgell, however, testifies that Plaintiff provided the information in response to Ridgell's oral questions during her interview of Plaintiff and Dintelman. *See* docket entry #56 (Ridgell Dep.) at 46-50. Additionally, Ridgell testifies that at the close of the interview, she advised Plaintiff and Dintelman that they were free to add a written statement to the form. *Id*. at 61. Dintelman added a written statement regarding his communications with the IRS, but Plaintiff did not provide a written statement. *See* docket entry #83, Ex. #5. According to Ridgell, Plaintiff asked what would happen if she did not sign the form, and Ridgell replied that she was not required to sign, but failing to sign the form would not stop the IRS from determining whether she was a responsible officer. *See* docket entry #56 (Ridgell Dep.) at 62-63.

[5]It does not appear that Dintelman dominated Plaintiff or prevented her from exercising her rights as a corporate officer and 50% owner. In fact, Plaintiff acknowledges that she forced Dintelman to hire Krakowski to work as a bookkeeper for Elite. *See* docket entry #48, at 21.

as a "responsible person" simply by surrendering her rightful authority or delegating duties to another.  *See Keller v. United States*, 46 F.3d 851, 854 (8th Cir. 1995)(noting that an otherwise responsible person does not avoid liability under § 6672 by delegating authority to another).

Because the record contains evidence both for and against finding Plaintiff a "responsible person" under § 6672, the Court is unable to grant summary judgment in Plaintiff's favor on this issue.

### B.  Willfulness

A  "responsible person" acts willfully if he or she "'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his [or her] action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes, or by proceeding with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government.'" *Ferguson v. United States*, 484 F.3d 1068, 1072 (8th Cir. 2007)(quoting *Keller v. United States*, 46 F.3d 851, 854 (8th Cir. 1995)(quoting *Honey v. United States*, 963 F.2d 1083. 1087 (8th Cir. 1992)).

"Evidence that the responsible person had knowledge of payments to other creditors, including employees, after he was aware of the failure to pay over withholding taxes is proof of willfulness as a matter of law."  *Olsen v. United States*, 952 F.2d 236, 240 (8th Cir.1991).  Here, the aforementioned IRS Form 4180, which bears Plaintiff's signature, states that Plaintiff learned about Elite's unpaid trust fund taxes "some months ago," indicating that Plaintiff knew about the unpaid taxes in mid-2003.  Furthermore, the Government has presented evidence that Plaintiff disbursed funds to creditors other than the IRS after that time.  *See* docket entry #83, Exs. #84, #85, #86, #35, #36.  Given the evidence presented by the Government, the Court

10

cannot find, as a matter of law, that Plaintiff did not willfully fail to pay over trust fund taxes.

### III. Plaintiff's Motion for Discovery

In opposition to Plaintiff's motion for summary judgment, the Government submitted a declaration by Powis-Dow, in which she states that in May 2003, she told Plaintiff, Dintelman, and Krakowski that "the unpaid federal employment taxes [were] not the company's money, and it was [Elite's] fiduciary responsibility to collect the payroll taxes and pay the money directly to the IRS." Docket entry #85, ¶5. In response, Plaintiff asks the Court to suspend consideration of her summary judgment motion, allow her to depose Powis-Dow, and permit her to file a reply in support of her motion for summary judgment.

Without considering Powis-Dow's declaration, the Court has determined that Plaintiff is not entitled to summary judgment. Accordingly, Plaintiff's motion for discovery will be denied.

IT IS THEREFORE ORDERED that Plaintiff's motion for summary judgment (docket entry #47) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for discovery (docket entry #86) is DENIED.

IT IS THEREFORE ORDERED THIS 7TH DAY OF JANUARY, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE